[702 NYS2d 654]

In the Matter of BEAU II., a Person Alleged to be in Need of Supervision, Appellant. LAURIE CASSEL, as Principal of Bennett Elementary School, et al., Respondents.

Third Department, December 30, 1999

### APPEARANCES OF COUNSEL

*Mitch Kessler, Law Guardian,* Latham, for appellant.

*Francis Murray, County Attorney* of Ulster County, Kingston (*Matthew P. Foley* of counsel), for respondents.

### OPINION OF THE COURT

CREW III, J. P.

Respondent (born in 1985) apparently was referred to the Onteora Central School District's Committee on Special Education in 1993. As a result of that referral, respondent was classified as emotionally disturbed, placed in a special education class and received a variety of services, including weekly counseling. Although respondent gradually was mainstreamed over the course of the next few years, he continued to experience problems and, accordingly, continued to receive certain special education support services.

In June 1998 petitioners, the principal at respondent's school and a school social worker, commenced this proceeding seeking to have respondent adjudicated a person in need of supervision (hereinafter PINS). The petition alleged, *inter alia*, that respondent had been tardy on 20 occasions during the 1997-1998 academic year and was disruptive in class. Thereafter, in October 1998, respondent admitted certain of the allegations set forth in the petition, and Family Court adjudicated respondent a PINS and adjourned the matter pending a predispositional investigative report.

Following a Law Guardian substitution, the parties appeared for a dispositional hearing in December 1998 at which time the Law Guardian moved to dismiss the petition, contending that such petition constituted a proposed change to respondent's educational plan in violation of the Individuals with Disabilities Education Act (20 USC § 1400 *et seq.* [hereinafter IDEA]). Family Court denied the motion and, at the conclusion of the hearing that followed, placed respondent under the supervision of the Ulster County Department of Probation for a one-year period. This appeal by respondent ensued.

In order to fully appreciate respondent's argument on appeal, a brief review of the IDEA is in order. The IDEA was designed to, *inter alia,* ensure that all children with disabilities

have available to them, within certain enumerated time periods, "a free appropriate public education which emphasizes special education and related services designed to meet their unique needs" (20 USC former § 1400 [c]). To that end, the IDEA establishes a framework of substantive and procedural rights for children with disabilities and their parents, including the establishment of an "individualized education program" (hereinafter IEP) for each child setting forth, *inter alia*, the specific educational goals and services to be provided (*see*, 20 USC § 1401 [11]). Should any State or local educational agency or unit receiving assistance under the IDEA elect or refuse to change a child's IEP, the child's parents must be given written notice thereof (*see*, 20 USC § 1415 [b] [3]) and are entitled to obtain an independent educational evaluation of the child (*see*, 20 USC § 1415 [b] [1]). Additionally, the IDEA vests such parents with the right to "an impartial due process hearing" (20 USC § 1415 [f] [1]), State administrative review of any adverse determination (*see*, 20 USC § 1415 [g]) and, *inter alia*, the right to be represented by counsel during such proceedings (*see*, 20 USC § 1415 [h] [1]). Similar provisions are embodied in Education Law article 89, which was adopted in order to comply with and complement the IDEA (*see*, *Matter of Ellison v Board of Educ.*, 189 AD2d 518, 519; *see also*, Education Law §§ 4402, 4404).

The crux of respondent's argument on appeal is that the filing of the PINS petition in Family Court constituted a proposed change to respondent's IEP, thereby triggering the substantive and procedural safeguards embodied in the IDEA and Education Law article 89.* Although not suggesting that respondent's disability and corresponding special education classification insulates respondent from the consequences of his allegedly incorrigible conduct, counsel does assert that any action taken against respondent must be undertaken in the first instance in the context of the administrative proceedings contemplated by the IDEA and Education Law article 89, not in the context of a PINS proceeding in Family Court. Petitioners, on the other hand, contend that a 1997 amendment to the IDEA plainly permits the commencement of a PINS proceeding pursuant to Family Court Act article 7 under the circumstances present here. We find petitioners' argument on this point to be unpersuasive.

---

* A "change in placement" has been defined as a fundamental change in basic element of the child's educational program (*see*, *Lunceford v District of Columbia Bd. of Educ.*, 745 F2d 1577, 1582).

The amendment relied upon by petitioners provides as follows: "Nothing in this subchapter shall be construed to prohibit an agency from reporting a crime committed by a child with a disability to appropriate authorities or to prevent State law enforcement and judicial authorities from exercising their responsibilities with regard to the application of Federal and State law to crimes committed by a child with a disability" (20 USC § 1415 [k] [9] [A]). As petitioners aptly note in their brief, "[i]t is clear that the intent of this legislation was to prevent students who commit crimes from using their disability as a shield against any action by law enforcement authorities". The underlying flaw in petitioners' argument regarding the applicability of this provision, however, is readily apparent. Despite the fact that respondent allegedly was physically aggressive to other students and allegedly threatened one particular student with a spoon handle, which respondent purportedly disguised and represented to the student as being a knife, respondent was not charged with committing any crime. Indeed, respondent was not even the subject of a juvenile delinquency petition under Family Court Act article 3; instead, respondent was charged under Family Court Act article 7 with being habitually truant and disobedient. As respondent was not subject to any criminal charges, we conclude that the subject amendment simply has no application to the matter before us and is of no aid to petitioners.

In short, we agree with respondent that the filing of the underlying petition indeed constituted a proposed change to respondent's IEP, thereby triggering the substantive and procedural safeguards set forth in the IDEA and Education Law article 89. Although petitioners averred that they exhausted all remedies available to them to no avail, it is clear that the procedures outlined in the IDEA and Education Law article 89 were not followed. Moreover, that petitioners did not seek and respondent ultimately was not placed in a residential facility is of no moment, as the mere filing of the petition posed a threat to respondent's educational program.

In reaching this result, we do not suggest that a disabled child is immune from a PINS or juvenile delinquency petition under the Family Court Act. We are, however, of the view that the "initiation of juvenile court proceedings concerning a disabled child [should] be treated as a change in educational placement, so that the child receives all of the protections mandated by [the] IDEA before adjudication of the child as unruly or delinquent commences" (*Morgan v Chris L.*, 927 F Supp 267, 271,

*affd* 106 F3d 401, *cert denied* 520 US 1271). Accordingly, the petition must be dismissed. In light of this conclusion, we need not address respondent's alternative argument regarding the sufficiency of his allocution at the fact-finding hearing.

SPAIN, CARPINELLO, GRAFFEO and MUGGLIN, JJ., concur.

Ordered that the order is reversed, on the law, without costs, and petition dismissed.