OPINION OF THE COURT
 

 Ciparick, J.
 

 As a condition for receiving Federal funds under the Individuals with Disabilities Education Act (IDEA), the States must agree to follow certain policies and procedures. One of those conditions, to which New York has agreed as a participant in the program, is that a parent or guardian of a child with a disability be given prior notice and, if requested, an opportunity to be heard at an administrative hearing whenever a local school seeks to change that child’s “educational placement”
 
 (see,
 
 20 USC § 1415 [b] [3], [6]; [d], [f], [k]; Education Law § 4402 [1] [b] [3]; § 4404).
 

 This case concerns a Family Court proceeding brought by school officials to determine if Beau, a child identified as having a disability under the IDEA, is a person in need of supervision (PINS). The question is whether the PINS proceeding which resulted in supervised probation represents a change in his educational placement triggering the procedural protections of the IDEA. Under the circumstances presented here, we conclude that this PINS proceeding did not contemplate a change in Beau’s educational placement.
 

 Classified as emotionally disturbed since he was in the third grade, Beau has been diagnosed with attention deficit disorder and depression that makes him oppositional and defiant. Since that time, he has been determined to be a “child with a disability” under the IDEA and his educational program has been developed, supervised and evaluated by his school’s committee on special education, which, under the New York Education
 
 *237
 
 Law, is charged with local oversight of the educational placement of a child with a disability (see, Education Law § 4402 [1] [b]). In fifth grade, Beau was “mainstreamed” or placed in regular classes in the public elementary school he attended.
 

 During that year, he began to manifest behavioral difficulties. He was frequently late to school and disruptive in class; he threatened school staff, and threatened and hurt other students. The committee on special education tried to remedy these problems with weekly counseling and home intervention visits by school social workers. During the 1997-1998 academic year, although Beau attended a different elementary school for sixth grade, his unruly behavior and excessive tardiness continued. His disruptive activities culminated in June 1998 when he allegedly threatened another student with what appeared to be a knife, but what later was discovered to be a spoon handle.
 

 Shortly thereafter, school district officials filed a PINS petition in Family Court
 
 (see,
 
 Family Ct Act art 7). The petition alleged that Beau was tardy 20 times during the 1997-1998 school year and also alleged certain incidents where respondent was disruptive and overly aggressive at school. At the fact-finding hearing on the petition, Beau admitted to the tardiness allegations in full satisfaction of the entire petition. Based on this admission, Family Court adjudicated him a PINS.
 

 At a subsequent dispositional hearing, Beau’s newly appointed Law Guardian objected that the PINS petition was prohibited because it contemplated a change in educational placement under the IDEA and New York Education Law. As a result, the Law Guardian moved to dismiss, contending that Family Court had no jurisdiction because the administrative procedures outlined in the IDEA and incorporated into New York law were mandatory and exclusive whenever there was to be a change in educational placement.
 

 Family Court denied the motion. It held that “the mere filing of a PINS petition does not necessarily work a change” in the educational services received by Beau. Family Court noted that the pre-dispositional investigation report prepared by the county probation department did not recommend a change in placement, but instead recommended probation. Also, Family Court relied on the testimony of the chairperson of the committee on special education, who testified at length as to the steps taken over the years to educate him in light of his disabilities. Although the committee on special education had that year
 
 *238
 
 considered placing him in a more restrictive environment, such as a residential placement, “the committee didn’t feel that changing to a more restrictive placement at this time would be effective.” Based on the committee’s and the probation department’s recommendations, Family Court placed Beau on one year of probation, which in the court’s words “would entail no change in [respondent’s] school or schooling but would add another layer of services to be provided to him.”
 

 On appeal, the Appellate Division reversed, holding that the “filing of the underlying petition indeed constituted a proposed change to [Beau’s] IEP [individualized education program], thereby triggering the substantive and procedural safeguards set forth in the IDEA and Education Law article 89” (264 AD2d 43, 46). We granted leave to appeal and now reverse.
 

 The Individuals with Disabilities Education Act, or IDEA, is a Federal grant program that seeks through the enticement of Federal funding to make States capable educators of children with disabilities, who, according to extensive Congressional findings, have long been marginalized in the public schools (see, 20 USC § 1400 [summarizing findings and purposes of IDEA];
 
 Board of Educ. v Rowley,
 
 458 US 176;
 
 see also,
 
 HR Rep No. 95, 105th Cong, 1st Sess 1, reprinted in 1997 US Code Cong & Admin News 78 [describing the continuing extent of the problem]).
 
 [1]
 
 To further this worthy goal, the IDEA mandates that the State educational authority or local school agency create an individualized education program (IEP) for each child with a disability (20 USC § 1414). The IEP determines the type and extent of a child’s disabilities and sets forth a plan for overcoming them to the extent that they impede a public school education. The phrase often reiterated is that children with disabilities are entitled to a “free, appropriate public education”
 
 (see,
 
 20 USC § 1400 [d] [1] [A]). Typically this includes “mainstreaming” or seeking to ensure that those with disabilities are included in the general flow of a public education,
 
 *239
 
 and are not second-classed apart from the rest of the school population
 
 (see,
 
 20 USC § 1412;
 
 Honig v Doe,
 
 484 US 305).
 
 [2]
 

 New York participates in the IDEA, as detailed in article 89 of the Education Law (Education Law §§ 4401 to 4410-a). Significant to this case, the “procedures required” by the IDEA include “written prior notice to the parents of the child whenever such agency * * * proposes to initiate or change * * * the identification, evaluation, or educational placement of the child” (20 USC § 1415 [b] [3]). The IDEA also sets forth the required contents of the notice (20 USC § 1415 [c], [d]) and establishes certain minimum procedural standards regarding administrative hearings, including the right to appeal decisions administratively and further challenge the agency determinations in a civil action (20 USC § 1415 [f], [g], [h], [i], (j], [k]). As required (20 USC § 1415 [a]), these provisions were duly enacted in various portions of New York Education Law— sections 4402 and 4404
 
 [3]
 
 — or have been incorporated in New York State Education Department regulations
 
 (see generally,
 
 8 NYCRR part 200) or local school district rules.
 

 The key phrase at the center of this dispute is “change in educational placement.” Without such a contemplated change, the IDEA procedural protections are not triggered. The school officials claim that not all PINS proceedings contemplate a change in a child’s educational placement and that this case serves as an example. We agree with them.
 

 The IDEA offers no specific statutory definition of when a change in educational placement occurs. Courts have generally adopted a narrow interpretation of the term
 
 (see, Concerned Parents & Citizens for Continuing Educ. at Malcolm X v New York City Bd. of Educ.,
 
 629 F2d 751, 755 [2d Cir],
 
 cert denied
 
 449 US 1078;
 
 see also, Board of Educ. v Illinois State Bd. of Educ.,
 
 103 F3d 545, 548-549 [7th Cir]). A student with a disability is entitled to IDEA’S procedural protections only if the school has proposed a modification that is “likely to affect the
 
 *240
 
 child’s learning experience in some significant way”
 
 (Dong v Board of Educ.,
 
 197 F3d 793, 801 [6th Cir]). For example, a change in placement occurs if a child with a disability is transferred “from one type of program to another,” but not if a child is transferred to another school offering equivalent educational programs
 
 (Concerned Parents & Citizens for Continuing Educ. at Malcolm X v New York City Bd. of Educ., supra,
 
 629 F2d, at 754).
 

 The United States Department of Education has opined that “a change in educational placement” means a change in the substance of the program itself, and “refers to a situation in which a student’s educational program is materially altered”
 
 (Letter to Fisher,
 
 21 Indiv with Disabilities Educ L Rep 992 [1994]). Whether a change in placement has occurred must be determined on a case-by-case basis, after considering the following factors:
 

 “whether the educational program set out in the child’s IEP has been revised; whether the child will be able to be educated with nondisabled children to the same extent; whether the child will have the same opportunities to participate in nonacademic and extracurricular services; and whether the new placement option is the same option on the continuum of alternative placements”
 
 (id.).
 

 In addition, the United States Supreme Court’s explication of the IDEA’S legislative history indicates that the Act was not designed to displace a State’s general welfare and supportive services for children
 
 (Board of Educ. v Rowley,
 
 458 US 176,
 
 supra).
 

 Here, the school officials did not seek to change Beau’s placement by filing a PINS petition. Rather, far from seeking to remove him from his educational program, the probation disposition of this PINS proceeding sought to enforce it. Habitual tardiness and aggressive behavior prevented him from taking advantage of his individualized education program. Probation primarily sought to improve his attendance record and supervise his activities, but did not seek to alter the school educational services provided. The PINS proceeding under the facts of this case was compatible and supportive of Beau’s individualized education program, not antagonistic toward it
 
 (see, In re Josh B.,
 
 22 Indiv with Disabilities Educ L Rep 86 [NH, Feb. 10, 1995, No. 94-59] [school district “filed the truancy petition to enforce the student’s IEP, not circumvent it”]).
 

 
 *241
 
 As a result of the PINS adjudication here, no substantial and material change was worked upon Beau’s educational placement. He attended the same school, the same classes and received the same counseling and school services to address his disability as before the PINS proceeding. The only difference was that he was subject to monitoring by the probation department during his year of probation. There was no modification of his educational program, much less a material change in his educational placement. The PINS petition was brought only to assist school authorities in retaining him in his existing program.
 

 Morgan v Chris L.
 
 (927 F Supp 267 [ED Tenn],
 
 affd without opn
 
 106 F3d 401), on which the Appellate Division relied, was a civil appeal from an administrative hearing held pursuant to the IDEA. In that prior IDEA hearing, the school officials were ordered to seek dismissal of an unruliness petition, the Tennessee analog to a PINS petition, they had brought against a child accused of engaging in vandalism in a school restroom. The
 
 Morgan
 
 court affirmed, holding that the unruliness petition contemplated a change in educational placement. In the court’s view, the IDEA administrative process was better able to decide “issues of educational policy and the child’s best interests” and thus an unruliness petition was barred (id., at 271).
 

 We cannot condone a blanket rule that all PINS proceedings are barred by the IDEA, which
 
 Morgan
 
 suggests. Intensely case specific, the need to follow IDEA procedures turns on whether there truly is a contemplated change in a child’s educational placement. Here, notwithstanding the PINS petition, the school district did not contemplate such a change. To the contrary, the committee on special education specifically rejected a more restrictive placement for Beau in favor of trying to retain him in his current program, in keeping with the purpose of the IDEA
 
 (accord, Applications of a Child with a Disability [Board of Educ. of Kenmore-Tonawanda Union Free School Dist.],
 
 published on the Internet at <http://seddmznt.nysed.gov/sro/96%2D55%2666.htm> [NY State Educ Dept, Off of State Review, Decision Nos. 96-55 & 96-66, Nov. 20, 1996, Eldridge, SRO] [PINS petition not necessarily indicative of change in placement]).
 
 [4]
 

 
 *242
 
 Since the Appellate Division did not address Beau’s remaining contention that his allocution to the tardiness charge was not knowing, voluntary and intelligent, we remit the matter to that Court for consideration of that claim.
 

 Accordingly, the order of the Appellate Division should be reversed, without costs, and the matter remitted to the Appellate Division for consideration of issues raised but not determined on the appeal to that Court.
 

 Chief Judge Kaye and Judges Smith, Levine, Wesley and Rosenblatt concur.
 

 Order reversed, etc.
 

 [1]
 

 . In 1975, Congress passed the Education for All Handicapped Children Act (EHA) (see, Pub L 94-142). EHA was based in part on two earlier enactments (see, Pub L 89-750 [establishing State grant programs for the education of handicapped children under title VI of the Elementary and Secondary Education Act]; Pub L 91-230). In 1990, after several other amendments, the EHA was renamed the Individuals with Disabilities Education Act (see, Pub L 101-476).
 

 [2]
 

 . In some cases, it may be possible for a child with a disability to be placed in a private school (see, 20 USC § 1412 [a] [10]).
 

 [3]
 

 . Specifically, New York requires that upon objection of a parent or guardian to the recommendation of the committee on special education, there must be a hearing before an impartial Hearing Officer (Education Law § 4404 [1]). A record is made for review, and the parties have a right to appeal to a State review officer (Education Law § 4404 [2]). The State review officer’s decision can then be reviewed in Supreme Court pursuant to an article 78 proceeding under the Civil Practice Law and Rules (Education Law § 4404 [3]).
 

 [4]
 

 . We note that the Legislature expressly contemplated some overlap between the Family Court and the committee on special education. Education Law § 4005 (1) requires that “[w]hen the placement of a child is being considered by the family court pursuant to section * * * [756] * * * of the
 
 *242
 
 family court act and such child is thought to have a handicapping condition and may be placed in a child care institution, the family court judge * * * shall request the school district of residence to provide that the committee on special education of such district evaluate such child and make written recommendations.”