## BOARD OF EDUCATION OF THE PAWLING CENTRAL SCHOOL DISTRICT, Plaintiff,

v.

## Steven SCHUTZ; Yvonne Schutz; State Education Department of the State of New York; and Frank Munoz, as the State Review Officer of the State Education Department of the State of New York, Defendants.

No. 00–CV–1105.

United States District Court, N.D. New York.

April 3, 2001.

Ruberti, Girvin & Ferlazzo, P.C., Albany, NY, Karen Norlander, Scott M. Goodspeed, of counsel, for Plaintiff.

Hon. Eliot Spitzer, Attorney General of the State of New York, Office of the Attorney General, Albany, NY, James J. Seaman, Asst. Atty. General, of counsel, for Defendants State Education Department of the State of New York and Frank Munoz, as the State Review Officer of The State Education Department of the State of New York.

Family Advocates, Inc., Kingston, NY, Rosalee Charpentier, of counsel, for Defendants Steven Schutz and Yvonne Schutz.

### MEMORANDUM—DECISION AND ORDER

HURD, District Judge.

## I. INTRODUCTION

On July 17, 2000, plaintiff Board of Education of the Pawling Central School District ("plaintiff" or the "District") commenced the instant action against defendants Steven Schutz and Yvonne Schutz (collectively, the "Schutzes"), and the State Education Department of the State of New York ("NYSED"), and Frank Munoz, as the State Review Officer of the State Education Department of the State of New York ("SRO Munoz") (collectively, the "State defendants"), pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq., ("IDEA"), and against NYSED and SRO Munoz pursuant to 42 U.S.C. § 1983.

Defendants now move to dismiss the complaint in its entirety. In addition, the Schutzes move for a preliminary injunction ordering the District to comply with SRO Munoz's order of March 16, 2000, requir-

ing it to reimburse them for the cost of their disabled son's private school tuition, and for attorneys' fees. Oral argument was heard on November 27, 2000, in Albany, New York. Decision was reserved.

## II. FACTS

This case arises out of a dispute over the education offered to the Schutzes' son, Kevin Schutz, a student in the District with severe dyslexia. There are no material facts in dispute in this case.[1]

Kevin Schutz entered the District in kindergarten in 1991. Classified as a student with a learning disability by the District's Committee on Special Education ("CSE") in 1993, Kevin continued to attend its public schools, where he received special education and related services pursuant to Individualized Education Programs ("IEP") for the 1993–94 and 1994–95 school years. In September 1995, the Schutzes objected to the proposed IEP for the 1995–96 school year and unilaterally removed Kevin from school and enrolled him in the Kildonan School ("Kildonan"). Kildonan is a nationally renowned private school which serves children with learning disabilities.

The parties were unable to resolve the dispute over Kevin's IEP, and the Schutzes requested an impartial hearing in 1997, on the grounds that the District failed to offer Kevin a free appropriate public education ("FAPE"). In that hearing, the Schutzes sought reimbursement of Kevin's tuition at Kildonan for the 1995–96 and 1996–97 school years.

In a decision issued on September 4, 1997, the hearing officer found that the

---

1. The only fact which appears to be in dispute is whether or not the District is currently "operating in contempt of" the decision of SRO Munoz ordering the prospective payment of tuition to the Schutzes. See Norlander Affidavit in Opposition to Cross Motion to

Dismiss and For an Injunction at ¶ 10; Charpentier Affidavit on Motion to Dismiss the Complaint and Cross–Motion For Injunctive Relief at ¶ 6 (the "Charpentier Affidavit"). However, this dispute is not relevant to the resolution of the instant motion.

District had failed to make a FAPE available to Kevin and awarded the Schutzes tuition reimbursement for both years. Plaintiff appealed this decision to SRO Munoz solely on the grounds that the tuition award was barred by the doctrine of laches. SRO Munoz denied the appeal. The District reimbursed the Schutzes in accordance with the hearing officer's order.

The Schutzes objected to the IEPs proposed by the District for the 1997–98 and 1998–99 school years, and the parties agreed to tuition reimbursement for those years. The Schutzes also objected to the IEP proposed by plaintiff's CSE for the 1999–2000 academic year, and re-enrolled Kevin at Kildonan. The Schutzes then requested an impartial hearing seeking tuition reimbursement for that school year.

At the outset of the hearing, the Schutzes sought to invoke the "stay put" provision of the IDEA, 20 U.S.C. § 1415(j). They requested that the hearing officer issue an interim ruling requiring plaintiff to pay Kevin's tuition at Kildonan during the pendency of the current dispute. The hearing officer denied the Schutzes' request on November 5, 1999. The Schutzes appealed to SRO Munoz, who sustained their appeal on March 16, 2000. SRO Munoz annulled the decision of the hearing officer and ordered the District to "reimburse petitioners for their expenditures for their son's tuition at the Kildonan School during the pendency of the proceedings brought concerning the boy's educational placement for the 1999–2000 school year." The District then commenced the instant lawsuit challenging this ruling.[2]

## III. STANDARD OF REVIEW

### A. 12(b)(6) Motion To Dismiss

In deciding a Rule 12(b)(6) motion, a court "must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant; it should not dismiss the complaint 'unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief.'" *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.1994) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *see also Kaluczky v. City of White Plains*, 57 F.3d 202, 206 (2d Cir.1995). However, conclusory allegations that merely state the general legal conclusions necessary to prevail on the merits and are unsupported by factual averments will not be accepted as true. *See, e.g., Clapp v. Greene*, 743 F.Supp. 273, 276 (S.D.N.Y. 1990); *Albert v. Carovano*, 851 F.2d 561, 572 (2d Cir.1988).

## IV. DISCUSSION

The State defendants move to dismiss the complaint in its entirety pursuant to Fed.R.Civ.P. 12(b)(6) on the grounds that it fails to state a cause of action upon which relief can be granted, and on the grounds that neither State defendant is a proper party under the IDEA. They also move to dismiss the complaint against SRO Munoz on the grounds of qualified and absolute immunity. The individual defendants also move to dismiss the IDEA claim against them pursuant to Fed. R.Civ.P. 12(b)(6).[3] Each of plaintiff's theo-

---

**2.** Subsequent to the commencement of this action, in a decision dated August 17, 2000, the impartial hearing officer found that the District had made a FAPE available to Kevin Schutz for the 1999–2000 school year, and that the Schutzes had improperly rejected the

District's IEP. This decision is currently being appealed by the Schutzes to SRO Munoz.

**3.** The plaintiff correctly points out that, because the Schutzes have answered the instant complaint, their motion is properly brought

ries of relief, and the defendants' objections thereto, are discussed below.

## A. Section 1983 Claims

### 1. Sovereign Immunity

■■■ The State defendants argue that plaintiff's Section 1983 claims must be dismissed as against the NYSED on the grounds of Eleventh Amendment immunity. This argument is correct. It is well-settled that Eleventh Amendment immunity applies to suits brought against the state pursuant to Section 1983. *See Will v. Michigan Dept. of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Grimes By and Through Grimes v.. Sobol,* 832 F.Supp. 704 (S.D.N.Y.1993) (state education department immune from suit brought under Section 1983). Moreover, because SRO Munoz is sued only in his official capacity, this cause of action must be dismissed against him as well. *See, e.g., Kentucky v. Graham,* 473 U.S. 159, 169, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (Eleventh Amendment immunizes state officials sued for damages in their official capacity); *K & A Radiologic Technology Svcs., Inc. v. Commissioner of the Dept. of Health of the State of New York,* 189 F.3d 273, 278 (2d Cir.1999) ("[S]tate officers, if sued in their official capacities for retrospective relief—are immunized by the Eleventh Amendment" from actions under Section 1983).

■■■ Plaintiff argues in opposition that the state has waived its sovereign immunity as to suits under Section 1983 by its voluntary acceptance of federal funds pursuant to the IDEA. The District correctly

notes that the IDEA contains an express abrogation of sovereign immunity as to suits brought pursuant to it. *See* 20 U.S.C. § 1404(a). However, the District's argument confuses the distinct and separate causes of action alleged herein—specifically suits brought pursuant to the IDEA (to which the State defendants are not immune) as opposed to suits brought pursuant to Section 1983 (to which they *are* immune). Because the IDEA's abrogation of sovereign immunity only extends to claims brought pursuant to that statute, the State defendants are entitled to sovereign immunity as to the Section 1983 cause of action.[4]

### 2. Due Process

■■ Even assuming that New York had waived its immunity from suit under Section 1983, plaintiff's due process claims must be dismissed. It is utterly beyond cavil that the due process clause of the Fourteenth Amendment does not protect a political subdivision of a state from the action of its own state. *See, e.g., Yonkers Comm. on Human Rights v. City of Yonkers,* 654 F.Supp. 544, 553 (S.D.N.Y.1987) ("[I]t is well established that Constitutional due process rights do not inhere in municipal corporations as against the state of their creation. A municipal corporation may not assert a denial of the equal protection or due process clauses of the Fourteenth Amendment as against the state by which created, and therefore, a department which is an arm or agency of a unit of state government, is not protected against the acts of the state or other enti-

---

under Rule 12(c) rather that Rule 12(b)(6). However, because the standard of review is the same under either provision, this error is harmless and their motion will be considered as though it had been brought under Rule 12(c).

4. In addition, defendants argue that SRO Munoz is entitled to absolute and/or qualified immunity as a "quasi-judicial" official. Because SRO Munoz is sued only in his official capacity, and is accordingly entitled to Eleventh Amendment immunity, it is not necessary to decide this question.

ties exercising state delegated authority."); *City of New York v. Richardson*, 473 F.2d 923, 929 (2d Cir.1973); *Aguayo v. Richardson*, 473 F.2d 1090, 1100–01 (2d Cir.1973); *Delta Special Sch. Dist. No. 5 v. State Bd. of Educ. for the State of Arkansas*, 745 F.2d 532, 533 (8th Cir.1984); *South Macomb Disposal Auth. v. Township of Washington*, 790 F.2d 500, 505 (6th Cir. 1986).[5] Accordingly, the District's due process claim must be rejected.[6]

## B. IDEA Claims

The District claims that SRO Munoz's order of tuition reimbursement to the Schutzes during the pendency of the ongoing dispute over its proposed IEP for Kevin Schutz violates the IDEA. Plaintiff's IDEA claim focuses upon the apparent conflict between Section 1412(c) and 1415(j) of that statute. For the reasons that follow, plaintiff's argument is rejected and its IDEA claim is dismissed.

Section 1415(j) contains what is known as the IDEA's "pendent placement" or "stay put" provision. *See Susquenita School District v. Raelee S.*, 96 F.3d 78, 82 (3d Cir.1996). The "pendent placement" provision provides, in pertinent part: "During the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents or guardian otherwise agree, the child shall remain in the then-current educational placement of such child." 20 U.S.C. § 1415(j).

The District argues that this "stay put" provision of Section 1415(j) must be read in conjunction with Section 1412(c). Section 1412(c)(i) states, in relevant part, that the IDEA "does not require a local educational agency to pay for the cost of education ... of a child with a disability at a private school ... if that agency made a free appropriate public education available to the child and the parents elected to place the child in such private school."

The State defendants' opposition focuses upon two arguments: first, that the express language of the IDEA and its associated regulations requires the tuition reimbursement at issue; and second, that neither NYSED nor SRO Munoz are proper parties under the IDEA. The individual defendants argue that the complaint must be dismissed because plaintiffs sue under Section 1404 of the IDEA, which has no relevance to the instant action.[7]

### 1. Proper Parties Under the IDEA

■ The State defendants argue for dismissal of the instant complaint on the grounds that neither NYSED nor SRO Munoz are proper parties to this action. This argument is rejected.

As to NYSED, it is clear that it is a proper party to the instant action. The Southern District of New York decision in

---

**5.** The State defendants argue that this claim must be dismissed because the plaintiff has failed to identify the deprivation of any private property, citing *Wenger v. Canastota Central School Dist.*, 979 F.Supp. 147, 153 (N.D.N.Y.1997), *aff'd* 208 F.3d 204 (2d Cir. 2000). This argument misses the fundamental fact that the District lacks standing to invoke the protections of the Fourteenth Amendment as against the State of New York.

**6.** In addition, the individual defendants move to dismiss the Section 1983 claim against them on the grounds that they are not state

actors; however, it is clear from the complaint that the Section 1983 claim is pleaded solely against the State defendants.

**7.** Section 1404 of the IDEA deals with the acquisition of equipment and the construction or alteration of facilities. 20 U.S.C. § 1404. Counsel for plaintiff has previously informed the Schutzes' attorney that the reference to Section 1404 is merely a typographical error. *See* Norlander Affidavit at ¶ 16. Accordingly, the individual defendants' motion will be disregarded to the extent that it argues for dismissal on this basis.

*Mr. "X" v. New York State Dept. of Educ.,* 975 F.Supp. 546 (S.D.N.Y.1997), is instructive on this point. In *Mr. "X"*, the court observed that, under New York's prior administrative scheme (wherein the Commissioner of Education acted as the review officer), there was no question that NYSED was a proper party to a review of the Commissioner's decision. *Id.* at 553 (citing *Mavis v. Sobol,* 839 F.Supp. 968 (N.D.N.Y.1993)). The court then reasoned, "[i]f the Commissioner acting as SRO ... once subjected SED to a judicial proceeding reviewing such a decision, it seems only logical that the SRO, appointed by the SED to make the same determinations, subjects SED to this court's jurisdiction." *Id.* This reasoning is adopted. NYSED is a proper party to the instant action.

SRO Munoz is a proper party to the instant action for the same reason. In *Mavis*, the Honorable Neal McCurn of the Northern District of New York held that the Commissioner of Education was a proper party to an action seeking review of his decision. *Id.* at 976–77. If the Commissioner could be haled into court to defend his review decision under the prior administrative scheme, there is no reason to conclude that a different result should follow because the State has chosen to delegate this authority to a State Review Officer.[8]

8. This result is in accordance with outcome which would obtain under New York law. Were this action brought pursuant to Article 78 of the New York Civil Practice Law and Rules, there is no question that SRO Munoz would be a proper party. *See* N.Y. C.P.L.R. § 7802(a) (defining "body or officer" against whom proceedings under Article 78 are authorized to include "every court, tribunal, ... officer, or other person ... whose action may be affected by a proceeding under this article."). *See also In re Beau II,* 95 N.Y.2d 234, 239, 715 N.Y.S.2d 686, 738 N.E.2d 1167 (2000).

## 2. *Merits of the IDEA Claim*

The basic purpose underlying the IDEA is "to assure that all children with disabilities have available to them ... a free appropriate public education which emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A).[9] Toward that end, the IDEA allows states to receive federal funding provided that their educational programs comply with not only the Act's substantive requirements, but also the procedural safeguards that the IDEA extends to children with disabilities and their parents. These procedural safeguards are meant to "guarantee parents both an opportunity for meaningful input into all decisions affecting their child's education and the right to seek review of any decisions they think are inappropriate." *Honig v. Doe,* 484 U.S. 305, 311–12, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988).

In New York, parents who object to an IEP may request an "impartial due process hearing" before a hearing officer. N.Y. Educ. Law § 4404. Any party aggrieved by the hearing officer's decision may then appeal that decision to the State Review Officer. *Id.* When a final administrative decision has been rendered, a dissatisfied party then has the right to bring a civil action in either federal or state court. 20 U.S.C. § 1415(i)(2).[10]

9. A "free appropriate public education" under the IDEA is one that is "provided in conformity with the individualized education program required under section 1414(d)." 20 U.S.C. § 1401(8).

10. Section 1415(i)(2), 20 U.S.C. § 1415(i)(2), of the IDEA provides in relevant part:
   Any party aggrieved by the findings and decision made under subsection ... shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district

Parents who "unilaterally changes their child's placement during the pendency of [the above] review proceedings, without the consent of state or local school officials, do so at their own financial risk." *School Committee of Town of Burlington, Mass. v. Department of Educ. of Mass.*, 471 U.S. 359, 373–74, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985). When parents reject an IEP and remove their children from public school without the consent of school officials, they are therefore required to pay any tuition expense incurred as a result of such unilateral placement. *See Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 86 F.Supp.2d 354, 357–58 (S.D.N.Y.2000). However, if the parents are ultimately successful in the review proceedings, the IDEA permits the retroactive recovery of any tuition expenses. *Burlington*, 471 U.S. at 372, 105 S.Ct. 1996.

This is so because, as the Supreme Court observed in *Burlington*, the administrative decision in favor of the parents "would seem to constitute an agreement by the State to the change of placement." *Id.* Therefore, once the parents receive an administrative decision in their favor, the student's "current educational placement" changes in accordance with that decision. *See* 34 C.F.R. § 300.514(c).[11] Moreover, a favorable administrative decision as to placement implies an agreement to pay for such placement. *Murphy*, 86 F.Supp.2d at 357, 366; *Susquenita*, 96 F.3d at 84.

The Southern District of New York recently considered a similar case involving the Kildonan School. In that case, the court held that:

> [O]nce the SRO rendered its decision, there was an 'agreement' changing [the student's] pendent placement to Kildonan. From that date forward, the District is responsible maintaining that placement. To hold otherwise would mean that parents who could not afford a private placement would be forced to maintain their child in a public placement that an administrative decision held to be inappropriate. This would contravene the purpose of the stay-put provision.'

*Murphy*, 86 F.Supp.2d at 366 (quoting *Board of Educ. of Oak Park & River Forest High Sch. Dist. No. 200 v. Illinois State Bd. of Educ.*, 10 F.Supp.2d 971, 977 (N.D.Ill.1998)).

In the instant case, the last final administrative ruling as to the current educational placement of Kevin occurred in September of 1997. That decision by an impartial hearing officer, which became final and binding upon the District following its unsuccessful appeal on the grounds of laches, fixed Kildonan as the current educational placement of Kevin Schutz. This ruling has yet to be supplanted by a final administrative decision altering Kevin's placement, and the parties have, by intervening agreements, maintained Kildonan as his "current educational placement." The District is therefore obligated to continue Kevin's placement at Kildonan until it is changed in accordance with the IDEA. *See, e.g., Jacobsen v. District of Columbia*

---

court of the United States without regard to the amount in controversy. In any action brought under this paragraph the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

**11.** 34 C.F.R. § 300.514(c) states:

If the decision of a hearing officer in a due process hearing conducted by the SEA or a State review official in an administrative appeal agrees with the child's parents that a change of placement is appropriate, that placement must be treated as an agreement between the State or local agency and the parents for purposes of [the stay put provision].

*Bd. of Educ.*, 564 F.Supp. 166, 171–72 (D.D.C.1983); *Murphy*, 86 F.Supp.2d at 360; *Susquenita*, 96 F.3d at 96–97. Accordingly, the District is required to comply with the March 16, 2000, decision of SRO Munoz ordering it to pay for Kevin Schutz's placement at Kildonan during the pendency of the ongoing administrative review.

The District argues that the foregoing analysis ignores the statutory mandate of Section 1412(c). 20 U.S.C. § 1412(c). Its argument is that Section 1412(c) imposes a requirement upon the State that as a precondition of ordering the payment of tuition for private school, the IEP currently proposed by the school district must be found to be inadequate. Under plaintiff's interpretation of the statute, regardless of whether a student is currently receiving tuition reimbursement for attendance at a private school, the mere proposal of a new IEP for a disabled student for a new school year abrogates the application of the "stay put" provision for that academic year. Plaintiff's interpretation cannot be accepted.

It is a basic tenet of statutory construction that statutes should be read in a manner, if possible, that will give effect to all of their provisions. *United States v. Gitten*, 231 F.3d 77, 80 (2d Cir.2000) (quoting *United States v. Menasche*, 348 U.S. 528, 538–39, 75 S.Ct. 513, 99 L.Ed. 615 (1955)). In the instant case, if the interpretation proffered by plaintiff is accepted, it would effectively render the language of the "stay put" provision, as well as its implementing regulations, meaningless. This is so because, if plaintiff's interpretation were accepted, a school district could avoid application of the "stay put" provision simply by proposing a new IEP. If a pendency placement could be so easily avoided, then Section 1415(j) would have little, if any, practical significance.[12]

The better interpretation of these sections is that the provisions of Section 1412, providing for the obligation of a school district to pay private school tuition only upon a finding that it has failed to offer a FAPE to a disabled student, is addressed to the situation where the parents have not yet successfully challenged a proposed IEP. As noted above, once such a challenge is successful, consent to the private placement is implied by operation of law.[13]

This result is in accord with the overall scheme of the IDEA. Section 1415(j) represents "Congress' policy choice that all handicapped children, regardless of whether their case is meritorious or not, are to remain in their current educational placement until the dispute with regard to their placement is ultimately resolved." *Susquenita*, 96 F.3d at 83 (quoting *Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 864–65 (3d Cir.1996)). In light of the protective purpose of Section 1415(j), it would be unwise to interpret the IDEA in such a manner as to render the "stay put" provision largely irrelevant. Accordingly, the

**12.** It has been suggested that Section 1415(j) was only intended to prevent the removal of a student during the school year for which the proposed IEP was rejected. This argument finds no support in either the statute or the case law. *Murphy*, 86 F.Supp.2d at 358–61.

**13.** The title of Section 1412(c) supports this conclusion. Section 1412(c) is entitled, "Payment for education of children enrolled in private schools without consent of or referral by the public agency." As discussed above, the obligation to pay for such students is imposed by Section 1415(j) when a student is placed in a private school by the "agreement" of the parents and the state. In such a case, the "consent" of the public agency is inferred from the prior determination. Under this view, Section 1412(c) is inapplicable to the instant case because, through its unsuccessful administrative appeal in 1997, the District has "consented" to the placement of Kevin at Kildonan.

District's proposed interpretation of Section 1412(c) cannot be accepted, and defendants are correct that plaintiff has failed to state a claim for relief under the IDEA.

### C. *Request for Injunctive Relief*

The Schutzes have requested that the District be ordered to continue to pay their son's tuition at Kildonan during the pendency of the ongoing dispute over the proposed IEP.[14] Because Kildonan is the current educational placement of Kevin, this result is mandated by Section 1415(j).

The Second Circuit has described the operation of Section 1415(j) as an "automatic preliminary injunction." *Zvi D. by Shirley D. v.. Ambach,* 694 F.2d 904, 906 (2d Cir.1982). In other words, once the parents prove their child's current educational placement (whether it be in public or private school), the local educational agency is then required to maintain that placement under the IDEA. While it is true that, on the facts of this case, the result is to impose a "significant financial burden on the States and school districts that participate in IDEA," *Florence County Sch. Dist. Four v. Carter,* 510 U.S. 7, 15, 114 S.Ct. 361, 126 L.Ed.2d 284 (1993), it is the result mandated under that statute. Because the current educational placement of Kevin Schutz is Kildonan, the District is required to continue to reimburse the Schutzes for the cost of tuition during the pendency of the instant dispute.[15]

### V. CONCLUSION

After careful consideration of the submissions of the parties, the relevant parts of the record, and the applicable law, it is hereby

ORDERED that

1. Defendants' motions are GRANTED;

2. The complaint is DISMISSED;

3. Plaintiff Board of Education of the Pawling Central School District is hereby directed to immediately comply with the March 16, 2000, decision of Frank Munoz, the State Review Officer of the State Department of Education of the State of New York, and to continue to comply with the pendent placement provision of 20 U.S.C. § 1415(j), as interpreted herein; and

4. Jurisdiction is retained to ensure compliance with the above directive.

The Clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.

---

14. The Charpentier Affidavit also contains a demand for attorneys fees pursuant to 20 U.S.C. § 1415. However, the Schutzes have offered no argument in support of this demand, and it is therefore denied.

15. Although it is not necessary to decide this issue on the instant motions, an additional point warrants brief discussion. The State defendants have asserted that 'the District would be entitled to recoup any payments made under the "stay put" provision if it is ultimately successful on its claim that its proposed IEP is appropriate. *See* Memorandum of Law in Support of Motion to Dismiss State Defendants at 1. There is some doubt concerning the accuracy of this statement, at least as applied to the Schutzes. While several courts have declined to reach this issue, *see Susquenita,* 96 F.3d at 87; *St. Tammany Parish Sch. Bd. v. Louisiana,* 142 F.3d 776, 789 (5th Cir.1998), in *Clovis Unified Sch. Dist. v. California Office of Administrative Hearings,* 903 F.2d 635, 641 (9th Cir.1990), the court held that the cost of a child's "stay put" placement must be borne by the school district and the state. Accordingly, it appears as though the tuition payments made by the District during the pendency of this appeal may not be subject to recoupment from the Schutzes, and no opinion is offered as to the manner in which this burden might be allocated between the District and the State.